UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LETHA KEMP,

      Plaintiff,

vs.                                     Case No. 13-11794

RESURGENT CAPITAL SERVICES,        HON. AVERN COHN
QUICKEN LOANS, THE BANK OF NEW
YORK MELLON, f/k/a The Bank of New
York as Trustee for the Certificateholders of
CWALT Inc., Alternative Loan Trust
2005-50CB Montage Pass-Through
Certificates Series 2005-50CB, BANK OF
AMERICA, and TROTT & TROTT, P.C.,

      Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING QUICKEN LOANS MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 16)
## GRANTING BANK OF NEW YORK MELLON AND BANK OF AMERICA'S MOTION TO DISMISS (Doc. 13)
## AND
## GRANTING RESURGENT CAPITAL SERVICES AND TROTT & TROTT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19)
## AND
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 24) AND MOTION FOR DISCOVERY (Doc. 11)
## AND
## DISMISSING CASE[1]

---

[1]Although originally schedule for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

## I.  Introduction

This is another one of many cases pending in this district involving a default on a residential mortgage loan and the commencement of foreclosure proceedings.  As will be explained, plaintiff Letha Kemp, proceeding pro se, defaulted on one of two mortgage loans used to finance her purchase of residential property located at 19532 Redfern, Detroit, Michigan.  Kemp contends she has a right to the property.  Kemp has sued Resurgent Capital Services (Resurgent), Quicken Loans, Inc., (Quicken Loans), Bank of New York Mellon (BNYM), Bank of America, and Trott & Trott, P.C. (Trott & Trott).  The complaint makes the following claims:

| | |
|---|---|
| Count I | lack of standing |
| Count III[2] | common law fraud and injurious falsehood |
| Count IV | violation of Fair Debt Collection Practices Act |
| Count V | violation of Truth in Lending Act |
| Count VI | violation of UCC 3-302 the plaintiff name was forged by the defendant |
| Count VII | negligent undertaking |
| Count VIII | negligent misrepresentation |

Kemp essentially claims that defendants wrongfully foreclosed on her property. She seeks a declaration that she is the rightful owner of the property and a money judgment in the amount of $4,500,000.00.

Before the Court are several motions.  Each defendant has filed a dispositive

---

[2]The complaint does not contain a Count II.

2

motion and Kemp has filed a motion for discovery and requests to admit and a motion for summary judgment.[3]  For the reasons that follow, the defendants' motions will be granted, Kemp's motions will be denied, and the case will be dismissed.

## II.  Background

On August 10, 2005, Kemp entered into a mortgage loan transaction with Quicken Loans.  The transaction involved two loans.  The first loan was for $99,200.00.  The second loan was for $16,500.00.  At closing, Kemp executed separate notes in favor of Quicken Loans, Inc. for the loans.  As security for the Loan, Kemp granted Quicken Loans two mortgages, one for each loan.  Each mortgage designates Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, "acting solely as a nominee for Lender and Lender's successors and assigns."

Shortly after closing, on or about August 22, 2005, Quicken Loans transferred its interest in the first loan to Countrywide Home Loans, Inc.  After that time, Quicken Loans had no involvement in the loan, mortgage, collection of the debt, or any foreclosure proceedings regarding the first loan.

On or about August 24, 2005, Quicken Loans transferred its interest in the second loan to Irwin Home Equity Corporations.  After that time, Quicken Loans had no involvement in the second loan.[4]

---

[3]Kemp filed a response to all of defendants' motions.  (Docs. 17, 21).  One of Kemp's responses is styled "Plaintiff's Opposition to the Defendants et al Motions to Dismiss/Motion to Strike Pursuant to Rule 12F."  While defendants construed the filing as a response and a motion to strike, and filed a response to the motion to strike (Docs. 23, 26), the Court construes Kemp's filing as a response.  To the extent Kemp moves to strike defendants' motions, the motion is DENIED.

[4]It is not clear from the record what became of the second loan.

On May 24, 2012, MERS executed an Assignment of Mortgage, assigning its interest in the first loan to BNYM. The Assignment of Mortgage was recorded on May 29, 2012, with the Wayne County Register of Deeds at Liber 49895, Page 1023. BOA was a servicer of the loan.

Kemp defaulted on her obligations under the note and mortgage on the first loan. As a result, BOA, instituted foreclosure proceedings as servicer, and on behalf of the owner of the indebtedness, BNYM. Kemp was notified of the intent to foreclose via letter dated October 31, 2012. Trott & Trott is legal counsel in the foreclosure proceeding and has prepared all of the foreclosure paperwork, including sending correspondence to Kemp.

Early into the foreclosure proceedings, on or about November 18, 2012, Resurgent began servicing the loan.

Notice of the foreclosure sale was published in The Detroit Legal News once each week for four successive weeks between March 18, 2013 and April 8, 2013. Notice of the foreclosure sale was also posted at the property on March 25, 2013. All of the notices listed MERS as the mortgagee on behalf of BNYM. Kemp filed this action on April 22, 2013 in federal court. The foreclosure sale has been postponed pending the outcome of this litigation.

### III. Legal Standards

#### A. Motion for Judgment on the Pleadings

"Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are analyzed under the same standard as motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Brown v. Potter, No. 10-12374, 2011 WL 2682644, at *2 (E.D. Mich. July 11, 2011); see

4

also <u>Kottmyer v. Maas</u>, 436 F.3d 684, 689 (6th Cir. 2006).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  <u>Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C.</u>, 636 F.3d 235, 240 (6th Cir. 2011).

### B.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  <u>See Albright v. Oliver</u>, 510 U.S. 266 (1994); <u>Bower v. Fed. Express Corp.</u>, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  <u>See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio</u>, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 679 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Id</u>. "Determining whether a complaint states a plausible claim for relief will . . . be a context-

5

specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

### C.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

> declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286 F.3d 366, 370 (6th Cir. 2002).

7

## IV.  Analysis

### A.  Quicken Loan's Motion

Quicken Loans moves for judgement on the pleadings, contending that none of Kemp's claims state a viable claim for relief against it.  The Court agrees.

As to Count I, Kemp alleges that the "defendants" lacked standing to initiate the foreclosure proceedings.  This claim fails against Quicken Loans for the simple reason that Quicken Loans has no interest either loan and has no role in the foreclosure proceedings.

As to the remaining counts, Quicken Loans is correct that they are barred by the applicable statute of limitations.  Count III, alleging fraud and misrepresentation, is subject to a six year statute of limitations.  See Miller v. Pathway Fin., Assured Capital Funding, No. 12-CV-14387, 2013 WL 1821252 (E.D. Mich. Apr. 30, 2013) (citing Mich. Comp. Laws § 600.5813; Boyle v. General Motors Corp., 468 Mich. 226, 230 n. (2003) (noting that a six-year statute of limitations is applicable to fraud actions in Michigan)).

Count III alleges common law fraud an injurious falsehood.  To the extent this count alleges fraud, the six-year limitations period set forth above applies.  To the extent this count alleges injurious falsehood, a three-year limitations period is applicable. Kollenberg v. Ramirez, 127 Mich. App. 345, 355 (1983) (applying a three-year limitations period to a claim for injurious falsehood that sought special pecuniary damages).

Count IV alleges a violation of the Fair Debt Collections Practices Act (FDCPA).

8

FDCPA claims are subject to a one-year limitations period.  Davis v. Countrywide Fin. Corp., No. 09-CV-10228, 2009 WL 2922896, at *2 (E.D. Mich. Sept. 9, 2009).

Count V alleges a violation of the Trust in Lending Act (TILA).  "A TILA action must be brought within one year of the date of the occurrence of the violation."  March v. Countrywide Home Loans Servicing, 10-12650, 2011 WL 1792592 (E.D. Mich. May 11, 2011) (citing 15 U.S.C. § 1640(e)).  Furthermore, any right to rescind based on a TILA violation expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  Id. (quoting 15 U.S.C. § 1635(f)).

Count VI alleges a violation of U.C.C. § 3-302 and that Kemp's name was forged by "Defendant."  This claim, which alleges that Kemp's name was forged on the promissory note, is subject to a three-year limitations period because it alleges an injury to person or property.  Ins. Co. of N. Am. v. Manufacturers Bank of Southfield, N.A., 127 Mich. App. 278, 283 (1983) ("Since payment on a forged indorsement is injury to property, the three-year statute of limitations applies where suit is brought on an implied contract theory.").

Count VII alleges that defendants committed a "negligent undertaking."  This is a claim for negligence, and it is therefore subject to Michigan's three-year limitations period.  Coyer v. HSBC Mortgage Servs., Inc., 701 F.3d 1104, 1108 (6th Cir. 2012) ("Even if the Coyers had stated a negligence claim, that claim is barred by the applicable three-year statute of limitation.") (citing Mich. Comp. Laws § 600.5805).

Count VIII alleges negligent misrepresentation.  This claim is subject to a

9

three-year limitations period in Michigan.  Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Honeywell Int'l, Inc., No. 11-CV-14036, 2013 WL 1303385, at *7 (E.D. Mich. Mar. 28, 2013) ("The negligent misrepresentation . . . claim[] ha[s] a statute of limitations of three years under Michigan law.").

All of the above counts are time barred because approximately seven-and-one-half years passed since Quicken Loans' last involvement with the subject loans.  As set forth above, Quicken Loans originated the two loans at issue on August 10, 2005.  Shortly thereafter, Quicken Loans transferred its interest in the loans. Since these transfers, Quicken Loans has had no involvement with these loans, the related mortgages, collection of the underlying debts, or any foreclosure proceedings relating to these debts.  Thus, any wrongdoing by Quicken Loans would have occurred at the latest—and if at all—in August of 2005.  Kemp filed this lawsuit on April 22, 2013, which was over seven years after the closing and the sale of Quicken Loans' interest in the loans.  By this date, all of the applicable limitations periods for Counts III and VIII had long since expired.  Thus, Quicken Loans is entitled to a judgment on the pleadings in its favor.[5]

### B.  BNYM and BOA's Motion

BNYM and BOA say that none of Kemp's claims state a viable claim for relief. The Court agrees.  Each count is addressed in turn below.

---

[5]Quicken Loans makes other arguments in support of its motion, including that the claims are all insufficiently plead or otherwise implausible.  The Court declines to address these arguments as to Quicken Loans, but they will be addressed as to the other defendants.

In Count I, Kemp alleges that defendants lacked standing to foreclose because a record chain of title does not exist, that the note and mortgage were split, causing the note to be unsecured and the mortgage to be unenforceable.  This claim fails to state a plausible claim against BNYM or BOA.  First, BOA at one point was the servicer of the loan.  As a servicer, it was entitle to initiate foreclosure proceedings under M.C.L. § 600.3204(1)(d) which states, "a party may foreclose a mortgage by advertisement if . . . the party foreclosing the mortgage is either the owner of the indebtedness . . . or the servicing agent of the mortgage."  Michigan's foreclosure by advertisement statute also permits the "mortgagee of record" to initiate foreclosure.  See M.C.L. § 600.3204(1)(d).  If the foreclosing party is not the original mortgagee, a record chain of title must exist prior to the date of sale.  See M.C.L. § 600.3204(3).  The record chain of title shows that BNYM is the mortgagee of record, and that Resurgence foreclosed as servicer on BNYM's behalf.  BOA did not conduct the foreclosure proceedings.

As stated above, on May 24, 2012, MERS executed an Assignment of Mortgage, assigning its interest in the Mortgage to BNYM.  The Assignment took place well before the foreclosure was instituted on October 31, 2012.  Because BNYM was the record holder of the mortgage before the foreclosure sale took place, BOA could start to foreclose on BNYM's behalf under M.C.L. § 600.3204(1)(d) and (3).

Moreover, Kemp's "note-splitting" theory fails to state a plausible claim for relief.  In Residential Funding Co. v. Saurman, 805 N.W.2d 183, 184 (Mich. 2011), the Michigan Supreme Court rejected the theory that separating a note from the mortgage extinguishes the right to foreclose.  "[T]he security is always made in trust to secure

11

obligations, and the trust and the beneficial interest need not be in the same hands." Id. See also Leone v. Citigroup, Inc., No. 12-10597, 2012 WL 1564698, at *3 (E.D. Mich. May 2, 2012) (holding that the securitization process does not invalidate or otherwise affect a borrower's obligations under a mortgage.

The mortgage itself demonstrates that MERS is the nominee both for the originating lender and its successors and assigns. Therefore, if the note is sold, there is no "split". See, e.g., Golliday v. Chase Home Fin., LLC, No. 1:10-cv-532, 2011 WL 4352554, at *7 (W.D. Mich. Aug. 23, 2011). Therefore, Plaintiff's "note-splitting" argument fails.

Finally, Kemp challenges the "Pooling and Servicing Agreement", (PSA), alleging that the PSA requires that all loans it acquires must be validly transferred to the trust" and that "failure to do so by the closing date is a violation of the express terms of the loan." However, Kemp has not alleged that the loan was not transferred pursuant to the operative PSA. Furthermore, Kemp's "PSA" theory has been rejected by the courts because, even if Kemp had identified the alleged PSA or provided its terms, she has not right to invoke the PSA or to claim any breach, and the parties to the PSA are free to ratify any alleged "breaches." Kemp's vague assertion that the foreclosure is invalid because it was not made in compliance with a PSA fails under Michigan law. See, e.g., Mitchell v. MERS, No. 1:11-cv-425, 2012 WL 1094671, at *3 (W.D. Mich. March 30, 2012) ("Plaintiff's theory regarding 'securitization' has been rejected as a basis for invalidating an assignment of a mortgage"). In Livonia Property Holdings, L.L.C. v 12840-12976 Farmington Road Holdings, L.L.C., 717 F. Supp. 2d 724, 737 (E.D. Mich.

12

2010), the court rejected plaintiff's attempt to challenge a Michigan foreclosure by advertisement because, regardless of the PSA, plaintiff "was not and is not a party to" the PSA or assignments of the mortgage, and, thus, "lack[ed] standing to challenge their validity or the parties' compliance with those contracts[.]".  The court explained:

> [T]he Plaintiff here lacks standing to assert any breaches in the terms of any contracts between the assigning entities. [citing the record] Moreover, any purported breaches in those contracts would not render the assignments themselves (which are separate contracts) void. And by transferring the original Loan Documents, including the Note, Mortgage, and all Assignments, all assigning entities appear to have ratified any alleged breaches in the terms of those contracts.

Id. at 748.  Thus, Kemp cannot challenge the PSA, as she was not a party to the agreement.  Count I must be dismissed as to BNYM and BOA.

BNYM and BOA argues that Kemp's fraud based claims, Counts III, VI and VI, should be dismissed because they are insufficiently pled.  In Count III, Kemp alleges that defendants "misrepresent[ed] facts, or purposely fail[ed] to disclose material facts, in the alleged lending or servicing of mortgage loans."  (Doc. 1, Compl., ¶ 41.)  In Count VI, she alleges that defendants "induced [her] to enter into the transaction when there existed in the inducement and execution material representations that were false . . . including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee."  (Compl., ¶¶ 49, 51.)  In Count VI, she alleges that defendants "forged their signature" and she "denies their signatures on all documents submitted by Defendant[s] due to their belief of being a victim of forgery." (Compl., ¶¶ 73, 74.)

Fed. R. Civ. P. 9(b) requires that allegations of fraud be made with particularity.

13

See Hennigan v. Gen. Elec. Co., No. 09-11912, 2010 WL 3905770, *14 (E.D. Mich. Sept. 29, 2010).  To comply with Rule 9(b), a plaintiff must, at a minimum, allege the time, place and content of the alleged misrepresentations on which she relied.  Thielen v. GMAC Mortgage Corp., 671 F. Supp. 2d. 947, 956 (E.D. Mich. 2009).  Under the general pleading standards, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).

    None of the fraud-based counts meet either the general pleading standard under Twombly and Iqbal, or the heightened standard under Rule 9(b).  Kemp does not specify the time, place or contents of these alleged statements, nor does she state who made the alleged misrepresentation or when.  Her conclusory allegations are wholly insufficient under Rule 9(b).

    Moreover, the fraud counts also fail because she has not plead all of the elements.  To state a claim of fraud, Kemp must plead that: (1) defendants made a material misrepresentation; (2) that was false; (3) which they knew to be false or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) defendants made the representation with the intention that it should be acted upon by her; (5) Kemp acted in reliance upon it, and; (6) Kemp thereby suffered injury.  See Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336 (1976) (internal quotations omitted).

    Count III fails because Kemp fails to allege that she acted in reliance upon any alleged misrepresentation made by defendants.  Similarly, Count VI (captioned as a

14

U.C.C. count, but alleging fraud) fails because Kemp does not allege that the

"robo-signing" was done with defendants' knowledge, with the intention that she act,

that she took action because of the alleged fraud, or that she suffered injury.

Moreover, the "law presumes that one who signs a written agreement knows the

nature of the instrument so executed and understands its contents." Watts v. Polaczyk,

242 Mich. App. 600, 604 (2000).  The mortgage documents which Kemp signed clearly

set forth the terms of the loan and state that if Kemp defaults on her obligations and fails

to cure that default, lender may invoke the power of sale.

As to Kemp's FDCPA claim, BNYM and BOA say that it must be dismissed

because Kemp has not stated how the FDCPA applies to them because they are not

"debt collectors" or "collection agencies" under the statute.  The FDCPA defines "debt

collector" as follows:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another. . . . [T]he term includes any creditor who,
> in the process of collecting his own debts, uses any name other than his own
> which would indicate that a third person is collecting or attempting to collect such
> debts. . . .

15 U.S.C. § 1692a(6) (emphasis added). "[C]reditors are not subject to the FDCPA

when collecting their accounts." Montgomery v. Huntington Bank, 346 F.3d 693, 699

(6th Cir.  2003); see also Partlow v. Aurora Loan Servs., L.L.C., No. 11-12940, 2012 WL

12766 *5 (E.D. Mich. Jan. 4, 2012) ("It is well settled that the provisions of the FDCPA

apply only to professional debt collectors, not creditors or mortgagors.") (citations

omitted).  BOA as servicer and BNYM as the owner of the indebtedness are exempt

from liability under the FDCPA.

In her response, Kemp points out that a loan servicer, like BOA, can be a debt collector if the debt was in default or treated as such when it was acquired.  However, Kemp does not allege whether the loan was actually in default when it was assigned to BNYM or when BOA began servicing it.  Her failure to do so makes the claim subject to dismissal.  See Mitchell v. MERS, No. 11-cv-425, 2012 WL 1094671 (W.D. Mich. Mar. 30, 2012) (dismissing FDCPA claim where plaintiff failed to allege the loan was in default at the time of servicing).

Even if the FDCPA applied to BOA or BNYM, Kemp's allegations still fail to state a claim.  Dismissing similar counts, the Court in Meyer v Citimortgage, Inc., observed:

> [P]laintiffs have not plead any facts illustrating what purported debt collection activities [the defendant] undertook, or how these activities violated the FDCPA. Instead, plaintiffs merely recite elements from the statute, which is insufficient to state a claim.
> ***
> Moreover, plaintiffs fail to plead any facts showing how CMI or Freddie Mac violated the MOC, and instead merely recite the elements of the statute.

No. 11-13432, 2012 WL 511995, (E.D. Mich. Feb. 16, 2012) *7 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

In Count V, Kemp alleges that defendants violated the TILA in that they "failed to provide necessary disclosures as mandated" under the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA").  This claim fails for several reasons.

First, it is time-barred.  As noted above, TILA actions must be brought within one year from the date of the occurrence of the violation.  15 U.S.C. § 1640(e) ("Any action

under this section may be brought . . . within one year from the date of the occurrence

of the violation"). Kemp's TILA claim is well-beyond the limitations period as the Loan

was executed on or around August 10, 2005 and this action was filed on May 22, 2013.

Moreover, Kemp fails to state a TILA claim against defendants, because sections

1639(a)(1)(A), (B) and 1635 (the TILA sections relating to disclosures) simply do not

apply. Section 1639(a)(1)(A) and (B) provides:

> [F]or each mortgage referred to in section 1602(aa) of this title, the creditor shall provide the following disclosures:
>
> (1) 'You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.'.
>
> (2) 'If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.'." 15 U.S.C. § 1639(a)(1)(A) and (B) (emphasis added).

Section 1635 provides:

> [I]n the case of any consumer credit transaction . . . **[t]he creditor** shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. **The creditor** shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." 15 U.S.C. 1635(a) (emphasis added).

Plaintiff alleges only that "Defendants are creditors as defined in the act." (Compl., ¶

70.) However, this blanket allegation is not plausible because the term "creditor" refers

only to an entity who:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and
>
> (2) is the person to whom the debt arising from the consumer credit transaction

17

**is initially payable on the face of the evidence of indebtedness** or, if there is no such evidence of indebtedness, by agreement."

15 U.S.C. § 1602(f) (emphasis added).  BOA and BNYM are not the entities to whom the loan was initially payable, as evidenced by the note and mortgage, which clearly list "Quicken Loans, Inc." as the original owner of the indebtedness.  Because neither BOA nor BNYM are the originating lenders and are not creditors as that term is defined under TILA.

Count V, cites a section of the Uniform Commercial Code (UCC) and makes fraud allegations.  The fraud allegations fails because, as discussed above, the fraud allegations are not sufficiently pled.  As to a violation of the UCC, such a claim fails to state a plausible claim for relief because the UCC applies to personal property, not real property.  Fodale v. Waste Mgmt. of Mich., Inc., 271 Mich. App. 11, 19 (Mich. Ct. App. 2006).  "Article 3 of the UCC does not apply to a mortgage for real property, because it is not a negotiable instrument."  Pace v. Bank of America, N.A., No. 12-12014, 2012 WL 5929931, at *3 (E.D. Mich. Nov. 27, 2012) see also Jaboro v. Wells Fargo Bank, N.A., No. 10-11686, 2010 WL 5296939, at *6 (E.D. Mich. Dec. 20, 2010).  Courts have specifically held that Article 3 of the UCC does not apply to mortgages.  See, e.g., Schare v. Mortg. Elec. Registration Sys., Inc., No. 11-cv-11889, 2012 WL 2031958 (E.D. Mich. June 6, 2012)

Counts VII and VIII allege negligence.  Kemp alleges that defendants "negligently undertook the misconduct alleged herein and to file false and deceptive records in the deed records of Wayne County." (Compl., ¶ 75.)  She also alleges that claims

18

"Defendants negligently misrepresented the true . . . beneficial owner of notes and related mortgages filed by them in the County for the purpose of avoiding the recordation of subsequent transfers and payment of attendant filing fee." (Compl., ¶ 76.)

Both claims fail.  First, to state a claim for negligence under Michigan law, a plaintiff must allege: "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of the duty caused the plaintiff injuries; and, (4) that the plaintiff suffered damages." Lelito v. Monroe, 273 Mich. App. 416, 418-19 (Mich. Ct. App. 2006).  Kemp has not alleged any of these elements.

Second, the negligence claims are barred by the economic loss doctrine.  Under Michigan law, a party is barred from recovering economic losses in tort, where those losses were suffered because of a breach of duty assumed only by contract.  Neibarger v. Universal Coops, 439 Mich. 512, 525–26 (1992); Fultz v. Union Commerce-Assoc., 470 Mich. 460, 467 (2004).  Where a contract exists, as it does here under the note and mortgage, the economic loss doctrine prohibits a party to the contract from bringing tort claims that are factually indistinguishable from breach of contract claims.  Neibarger, 439 Mich. at 528; Huron Tool Eng'g Co. v. Precision Consulting Servs, 209 Mich. App. 365, 375.

Finally, BNYM and BOA argue that to the extent Kemp seeks to assert a claim under the Real Estate Settlement Procedures Act (RESPA), such a request should be denied.  Kemp does cite a section of RESPA in her response to BNYM and BOA's

motion.  The Court agrees that such a claim, if Kemp is seeking to assert it, should be disregarded because it was not pleaded in the complaint.  Moreover, as explained in BNYM and BOA's reply brief, Kemp has not articulated a viable RESPA claim and any amendment to do so would be futile.

Overall, Kemp's claims against BOA and BNYM fail to state a plausible claim for relief and must be dismissed.

### C.  Resurgence and Trott & Trott's Motion

Resurgence and Trott and Trott move for summary judgment on all of Kemp's claims, presenting many of the same arguments advanced by BNYM and BOA.

As to Count I, as explained above, Resurgence as the current servicer of the loan is entitled to foreclose on BNYM behalf.  The foreclosing party is still BNYM.

Trott & Trott, as legal counsel in the foreclosure proceedings, is not the party actually foreclosing and has no interest in the property.  Thus, Kemp does not have a viable claim against Trott & Trott under Count I.

Moreover, Kemp's note splitting claim and claim based on a violation of a PSA found under Count I fail for the reasons set forth above.

Kemp's fraud based claims under Counts III, IV, V, and VI also fail against Resurgence and Trott and Trott as they are insufficiently pled.  The complaint contains no detailed allegations of fraud by either Resurgence or Trott & Trott.  Additionally, any forgery claim under Count VI is barred by the statute of limitations, as set forth above.

As to Kemp's claim under the FDCPA in Count VI, Resurgence and Trott & Trott

20

contend that assuming they are debt collectors under the statute, the claim still fails to state a plausible claim for relief because the complaint does not state how they violated the FDCPA.  Nor, as they have moved for summary judgment, has Kemp come forward with any evidence to show that they violated the FDCPA.

Resurgence and Trott & Trott also contend, correctly, that Kemp's TILA claim is time-barred.  As explained above, Kemp's TILA claim arose in 2005, she filed suit in 2013, well-beyond the one year statute of limitations.

Finally, Kemp's negligence claims against Resurgence and Trott & Trott fail for the same reasons they fail against BNYM and BOA.  The claims are not sufficiently pled and are barred by the doctrine of economic loss.

### D.  Kemp's Motions

Kemp filed a paper styled "Plaintiff's Affidavit and Motion for Summary Judgment Pursuant to Rule 56(e).  The motion appears to pertain only to Count IV, her claim for violation of the FDCPA.  She seeks judgment in her favor on this claim against all of the defendants because they failed to respond to her request to "validate the debt."

Kemp's motion must be denied.  First, not all of the defendants can be considered debt collectors under the FDCPA.  Even assuming any of the defendants are debt collectors, Kempt has not put forth any evidence to substantiate her FDCPA claim such that she would be entitled to summary judgment.  The only evidence, outside of her self-serving affidavit, is a list of alleged mailings to various individuals, some with tracking numbers, some without, some with apparent delivery codes, and some without. Kemp did not attach any of the letters she allegedly sent.  There is no way to determine

21

on the record whether any request was made to validate the debt, to whom it was made, whether the request was subject to the FDCPA, or whether any of the defendants failed to properly respond to the request.  Summary judgment in her favor is not appropriate.

Kemp also filed a motion for discovery and request for admissions.  This motion was prematurely filed in light of the fact that all of the defendants filed dispositive motions.  The motion was filed even before BNYM and BOA entered the case.  Moreover, in light of the Court's decision today, Kemp's motion is moot.

### V.  Conclusion

For the reasons stated above, Kemp has not established that the pending foreclosure should not take place.  Her claims challenging the loan and foreclosure process are not sustainable.  Accordingly, defendants' motions are GRANTED.  Plaintiff's motions are DENIED.

This case is DISMISSED.

SO ORDERED.

 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  October 21, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 21, 2013, by electronic and/or ordinary mail.

 S/Sakne Chami
Case Manager, (313) 234-5160

22